This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39134**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**MODA JAMES BENTLEY,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**T. Glenn Ellington, District Judge**

Hector H. Balderas, Attorney General
Emily Tyson-Jorgenson, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mark A. Peralta-Silva, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**HANISEE, Chief Judge.**

**{1}** Defendant Moda James Bentley appeals the district court's amended judgment and sentence, final order on probation violation, commitment to the department of corrections, and transport order (the amended judgment and sentence). Defendant raises the following arguments on appeal: (1) the district court denied his due process rights by holding the evidentiary hearing related to his probation revocation via audio-visual connection, rather than in-person, pursuant to Supreme Court Order No. 20-

8500-013 (April 16, 2020) (the Supreme Court Order);[1] and (2) the district court erred in enhancing Defendant's sentences because it no longer had jurisdiction.[2] We affirm.

**BACKGROUND**

**{2}** On July 10, 2017, Defendant pleaded guilty to felonies related to two different district court cases: (1) possession of a firearm or destructive device by a felon, contrary to NMSA 1978, Section 30-7-16 (2001, amended 2020), from district court cause number D-0101-CR-2016-00473 (Case 473); and (2) receiving or transferring a stolen vehicle or motor vehicle, contrary to NMSA 1978, Section 30-16D-4 (2009), from district court cause number D-0101-CR-2016-00451 (Case 451). Defendant was sentenced to a total of three years of probation, comprised of two eighteen-month sentences to be served consecutively. In his plea agreement, as well as in the district court's original global judgment and order fully suspending his sentence (original global judgment and sentence), Defendant admitted his identity as it related to two prior felonies, and the State reserved the right to enhance Defendant's sentence as a habitual offender in the event he failed to comply with the terms of his plea agreement and probation sentence.

**{3}** On January 22, 2020, the State sought to revoke Defendant's probation, alleging that Defendant violated his probation by possessing a switchblade knife, which he used to stab another individual. On May 1, 2020, the district court held an evidentiary hearing on Defendant's alleged probation violation and the State filed a supplemental criminal information charging Defendant as a habitual offender based on the two prior felony convictions. Following the evidentiary hearing, the district court revoked Defendant's probation and filed the amended judgment and sentence, in which Defendant was sentenced as a habitual offender to serve eleven years of incarceration, less applicable credit for presentence confinement and time served. Defendant appeals.

---

1The Supreme Court Order set forth procedures related to the function of judicial proceedings in light of the COVID-19 pandemic. *See* Supreme Court Order No. 20-8500-013 (April 16, 2020), https://www.nmcourts.gov/wp-content/uploads/2020/12/Order-No_-20-8500-013-Updating-and-Consolidating-Precautionary-Measures-for-Court-Operations-in-NM-Judiciary-4-16-20.pdf. At issue on appeal is the following provision: "All judges shall use telephonic or audio-visual attendance for court appearances by attorneys, litigants, witnesses, and the press unless there is an emergency need for an in-person appearance upon motion of a party. A judge may also require an in-person appearance on the judge's own initiative, without a motion by a party, provided that the judge shall confer with the parties and the chief judge of the district before proceeding with an in-person appearance. Judges may continue to take other protective measures, including the granting of continuances upon motion of any party or the judge's own motion, in appropriate cases when remote appearances are not feasible but an emergency need for an in-person appearance does not exist. Any criminal procedure rules requiring the presence of the defendant may be accomplished through remote, audio-visual appearance in the discretion of the judge, provided that confidential communication between the defendant and defense counsel is made available[.]" Supreme Court Order No. 20-8500-013 at 4.

2Defendant argues as well that the district court erred in enhancing his sentence because the State failed to prove his identity as to his prior felony convictions that were used to enhance his sentence. Defendant's argument in this regard is unavailing given that the record clearly demonstrates that Defendant admitted his identity as it related to his prior felony convictions, and we decline to consider this issue further.

**DISCUSSION**

**I.      The District Court Retained Jurisdiction to Enhance Defendant's Sentence**

**{4}**      Defendant argues the district court erred in amending and enhancing his sentence because Defendant had (1) already fully served his probation term in Case 451, and (2) a reasonable expectation of finality that his probation would conclude prior to its revocation based on the application of presentence confinement credits. We address each argument in turn.

**{5}**      First, Defendant argues that he had fully served his probation term in Case 451 prior to the district court's amendment and enhancement of his sentence, specifically asserting that the language in his original global judgment and sentence was "unambiguous" in indicating Defendant was to serve two eighteen-month probation terms—one for Case 451 and one for Case 473—with the probation term in Case 451 running first, followed by the probation term in Case 473. Under this interpretation of the original global judgment and sentence, Defendant contends that he completed his probation term in Case 451 on January 10, 2019—months prior to the May 1, 2020, evidentiary hearing that resulted in the district court's order at issue here—and that the district court, therefore, did not have jurisdiction to amend or enhance Defendant's sentence as it related to Case 451. We disagree.

**{6}**      Defendant's plea agreement provided that the two eighteen-month probation terms "shall run consecutively . . . for a total of three (3) years of potential jurisdiction. At initial sentencing, the State will not pursue any [h]abitual [o]ffender [e]nhancement, though the State will pursue [habitual offender enhancement] if Defendant does not fulfill the" terms of the plea agreement and sentencing. The original global judgment and sentence reiterated that while the State had not pursued a habitual offender enhancement, Defendant had "waived any objection to a subsequent filing of a supplemental information and the State reserve[d] its rights to file such a supplemental information [to pursue such an enhancement] should . . . Defendant fail to comply with the conditions" of the original global judgment and sentence. The original global judgment and sentence went on to provide the details of the two eighteen-month probation terms, stating that the imposed probation sentences "shall be served consecutively to each other for a total of three (3) years, all of which is suspended on the condition of three (3) years of supervised probation." Worded as such, the original global judgment and sentence, in place when Defendant violated the conditions of his probation, establish that his periods of probation were two consecutive eighteen-month terms. Thus, Defendant's argument that his probation should have concluded after his first eighteen-month term is incorrect. The amended judgment and sentence, filed in light of Defendant's probation violation at issue in the instant case, somewhat differently described the original sentence of two eighteen-month periods of incarceration, stating they were to be "suspended on the condition that . . . Defendant successfully complete eighteen (18) months of supervised probation[,]" and that such sentences "were ordered to be served consecutively for a total period of incarceration of three (3) years, all of which was suspended on the condition of three (3) years of supervised probation." The

amended judgment and sentence reiterated that while the State had previously declined to file a supplemental information charging Defendant as a habitual offender and enhancing his sentence accordingly, pursuant to his plea agreement, Defendant had "waived any objection to a subsequent filing of a supplemental information and the State reserved its right to file such a supplemental information should . . . Defendant fail to comply with the conditions of probation."

**{7}** Defendant does not demonstrate or point to any indication in the record to support an interpretation that his sentence was structured such that the total term of probation was divided and portions assigned to run in accordance with either count rather than total time. Indeed, neither the original sentence—in effect during the probation violation and revocation of probation—nor the manner in which it was described in the amended judgment and sentence, lead to any such conclusion. "It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." *Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 (internal quotation marks and citation omitted). Further, despite Defendant's contentions to the contrary, following our review of the record, we conclude there to be no indication that the district court intended for Defendant's probation terms to run in any manner other than in total time, and Defendant was thus still subject to the district court's jurisdiction for enhancement of both counts. *See State v. Yazzie*, 2018-NMCA-001, ¶ 14, 410 P.3d 220 (explaining that "[b]ecause neither the plea agreement nor the judgment and sentence structured [the d]efendant's sentence such that the time served on probation corresponded with a particular conviction, [the d]efendant had no reasonable expectation of finality . . . or any limitation on the enhancement . . . prior to the completion of" the probation term). Indeed, Defendant's plea agreement provided that the two eighteen-month probation terms "shall run consecutively . . . for a total of three (3) years of potential jurisdiction." Because both the original and amended sentences stated that Defendant waived any objection to the State pursuing a habitual offender enhancement in the event Defendant violated the terms of his probation, we conclude that the district court intended to retain jurisdiction through the completion of Defendant's three-year probation term—upon which the suspension of his incarcerative sentence was premised.

**{8}** We next address Defendant's argument that Defendant had a reasonable expectation of finality in his probation ending on March 5, 2020—had the district court applied presentence confinement credits—and therefore the district court was without jurisdiction to enhance his sentence on May 1, 2020. In *State v. Nieto*, 2013-NMCA-065, ¶ 8, 303 P.3d 855, we held that presentence confinement credit "need not be credited against the probation time ordered by the district court." As we further explained:

> [I]f the Legislature intended for a district court defendant's probation time to be reduced by pre[]sentence confinement credit, it would have likewise drafted the applicable statute to limit probation periods for district courts to the maximum allowable incarceration time, as it did for magistrate and metropolitan courts. Notably, the Legislature expressly limited the district

court to a total of five probation years, without reference to maximum incarceration periods.

We underscore that the suspension of a sentence is not a matter of right but is an act of clemency within the district court's discretion[, and] . . . conclude that it was within the discretion of the district court to choose to suspend [the d]efendant's sentence and to decide the parameters of probation most suitable[.]

*Id.* ¶¶ 5, 7-8 (omission, internal quotation marks, and citations omitted). To the extent Defendant asks that we reexamine *Nieto* in light of its failure to address either (1) "how presence confinement credits affect an expectation of finality[,]" or (2) a "situation where applying pre[]sentence confinement credits would complete a probationer's term of probation prior to revocation[,]" we decline to do so considering that Defendant cites no authority to support his arguments in this regard, including his contention that *Nieto* is insufficient authority on the issue of whether presence confinement credits apply to probation terms. *Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists.").

**{9}** Concluding there to be no indication that Defendant's sentence was intended to run as two separate eighteen-month probation terms, but rather as a combined three-year term, and that there is no authority to support the application of presence confinement credits to the term of probation ordered in Defendant's sentence, we hold that the district court retained jurisdiction to amend and enhance Defendant's sentence, and that it did so without error.[3]

**II.    The District Court Did Not Err in Holding the Evidentiary Hearing Via Audio-Visual Connection, Pursuant to the Supreme Court Order**

**{10}** Defendant argues that the district court violated his due process rights by holding his evidentiary hearing via audio-visual connection, pursuant to the Supreme Court Order. Specifically, Defendant contends that by holding the evidentiary hearing virtually, the district court violated (1) his right to effective assistance of counsel; (2) his right to confront and cross-examine witnesses;, and (3) his right to a public trial.

**{11}** The Supreme Court Order states that "[a]ll judges shall use telephonic or audio-visual attendance for court appearances by attorneys, litigants, witnesses, and the press *unless there is an emergency need* for an in-person appearance upon motion of a party." Supreme Court Order at 4 (emphasis added). The Supreme Court Order further provides that the district court has discretion to order in-person appearances "on the

---

3In light of our holding, we decline to address the State's argument that Defendant's claim should have been pursued via a petition for writ of habeas corpus, but note that Defendant is not precluded from filing a petition for habeas corpus. *See* Rule 5-802(A) NMRA (governing "the procedure for filing a writ of habeas corpus by persons in custody or under restraint" and who seek "a determination . . . that the district court was without jurisdiction to impose such sentence").

judge's own initiative, without a motion by a party, provided that the judge shall confer with the parties and the chief judge of the district before proceeding with an in-person appearance." *Id.* Specifically related to criminal proceedings, the order provides as well that "[a]ny criminal procedure rules requiring the presence of the defendant may be accomplished through remote, audio-visual appearance in the discretion of the judge, provided that confidential communication between the defendant and defense counsel is made available[.]" *Id.* Under these provisions, the district court has discretion to require in-person appearances within certain parameters or when moved to do so by a party asserting an emergency need to appear in person.

**{12}** In *State v. Peru*, 2022-NMCA-018, ¶ 7, 508 P.3d 907, we considered a similar challenge to the district court's compliance with the Supreme Court Order and held that the district court did not err in holding proceedings via audio-visual connection because the defendant failed to demonstrate emergency need for an in-person appearance. In *Peru*, we clarified that under the Supreme Court Order, while "the district court has discretion to require in-person appearances within certain parameters or when moved to do so by a party asserting an emergency need to appear in person[, t]he Supreme Court Order does not require the district court to grant a defendant's motion for in-person proceedings where such motion fails to present an emergency need." *Id.* Here, Defendant's motion for in-person appearance does not assert an emergency need for Defendant to appear in-person, instead merely asserting the constitutional rights Defendant claimed would be violated by appearing at his evidentiary hearing via audio-visual connection. Defendant further fails to articulate on appeal that his motion was supported by an emergency need. Because Defendant fails to establish that his motion to appear in-person was supported by emergency need, we can assign no error to the district court's compliance with the Supreme Court Order. *See State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 (explaining that "[t]here is a presumption of correctness in the district court's rulings" and that it is a defendant's "burden on appeal to demonstrate any claimed error below" (alterations, internal quotation marks, and citation omitted)). We therefore hold that the district court did not err in its interpretation of and in compliance with the Supreme Court Order.

**{13}** We note that to the extent Defendant's arguments in this regard imply that the Supreme Court Order is, itself, unconstitutional and conflict with existing precedent, we remind Defendant that we are precluded from reviewing arguments challenging the constitutionality or validity of New Mexico Supreme Court orders, and such arguments should be made directly to the Supreme Court. *See Alexander v. Delgado*, 1973-NMSC-030, ¶ 9, 84 N.M. 717, 507 P.2d 778 ("The general rule is that a court lower in rank than the court which made the decision invoked as a precedent cannot deviate therefrom and decide contrary to that precedent, irrespective of whether it considers the rule laid down therein as correct or incorrect." (internal quotation marks and citation omitted)); *see also* N.M. Const. art. VI, § 3 (providing that our Supreme Court is granted "superintending control over all inferior courts").

**CONCLUSION**

**{14}** For the above reasons, we affirm.

**{15}  IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**GERALD E. BACA, Judge**